UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,  Case No. 16-cr-32-pp

    Plaintiff,

v.

PAULA FORBES,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S LETTER MOTION TO AMEND JUDGMENT (DKT. NO. 60), AND CLARIFYING JUDGMENT REGARDING PAYMENT OF SPECIAL ASSESSMENT**

---

On June 9, 2017, the court sentenced the defendant after a jury convicted her of one count of conspiring to obtain payments for false claims in violation of 18 U.S.C. §286 and thirteen counts of preparing false tax returns in violation of 18 U.S.C. §§2 and 287. Dkt. Nos. 53, 55. As part of that sentence, the court imposed a special assessment of $1,400—$100 for each of the fourteen counts of conviction. Dkt. No. 53 at 5. The court also ordered the defendant to pay restitution of $143,016, and ordered that she owed $10,412 of that amount jointly and severally with co-conspirator Marcel Davis. Id.

On page 6 of the judgment, the court ordered that the defendant had to pay these financial obligations "in equal monthly installments of not less than $50.00 until paid in full, to commence 30 days after release from imprisonment to a term of supervision . . . ." Id. at 6. To the court, that language clearly indicates that the defendant was *not* obligated to start making special

1

assessment or restitution payments until thirty days after she is released from custody. The court did not intend the defendant to begin making either the special assessment payments or the restitution payments while she was in custody.

The defendant has written the court a letter, however, indicating that at her six-month review with her case manager and counselor, "it was brought to [her] attention" that she was responsible for paying "the Financial Resp. Participants which is $100 per count." Dkt. No. 60 at 3. She indicates that in her case, this comes to $1,400. She says that she had been paying $32 every three months against this obligation (which she could afford), but that now she's been "asked to pay $200.00 dollars every three-months which is not feasible at this time." Id. She says that her counselor told her that it "wasn't clear or specific" in the judgment how and when she was to pay the $1,400, and therefore that the Bureau of Prisons is "authorized to sanction [her] to pay any amount at any time over $50.00 per month." Id. She asks the court to revise the judgment and "be specific as possible for [her] to pay upon [her] release or continue to pay $32.00 every three-months." Id.

The defendant does not say that the $1,400 amount is for her special assessment, but the court assumes that it is. If the Bureau of Prisons has been requiring the defendant to pay $32 every three months toward that special assessment, it should not have been doing so. The court specifically marked the box on the judgment form stating that the defendant should start paying the special assessment and the restitution thirty days *after* she is released from

custody to supervision, and then at a rate of $50 per month. The court does not know why that would not be clear from the judgment.

Sometimes, sentencing courts order a defendant to pay the special assessment immediately. See, e.g., In re Buddhi, 658 F.3d 740, 741-42 (7th Cir. 20110). There is a box on the judgment form that the court can check if that is what the court intends. It is the first box on the "Schedule of Payments" page—Box A. It says, "Lump sum payment of $_____ due immediately." If a court checks that box, the special assessment (and any other penalty the court may impose) is due immediately. If the inmate cannot pay immediately, she can work with prison staff under the Inmate Financial Responsibility Program to develop a financial plan to pay it while in custody. https://search.usa.gov/search/docs?affiliate=bop.gov&query=inmate+financial+responsibility+program. In the defendant's case, however, the court did not check that box.

There is also a box on the judgment form—Box C—that a court may check if it wants a defendant to pay financial obligations out of her prison earnings. That box says, "Payment in equal monthly installments of not less than $_____ or 10% of the defendant's net earnings, whichever is greater, until paid in full, to commence 30 days after the date of this judgment." If a court checks that box, the defendant must make monthly payments against her financial obligations while she is in custody, either in the amount specified by the court or at 10% of her net earnings, whichever amount is greater. In the defendant's case, the court did not check that box, either.

3

In the defendant's case, the court chose Box D, which does not require the defendant to start making payments against *any* of her financial obligations until thirty days after she is released from custody into supervision. The court selected that option for a reason. Because the jury convicted the defendant on fourteen counts, her special assessment is significant—$1,400. She also is responsible for a large amount of restitution. Given the incarceration sentence the court imposed (twenty-four months), the court's expectation that the defendant would earn some time off for good behavior and the court's assumption that the defendant would not earn significant wages while serving that time, the court elected to allow the defendant to defer making payments against her financial obligations—including the special assessment—until after her release from incarceration.

Under the Inmate Financial Responsibility Program, inmates are supposed to work with prison staff at the time of intake to develop financial plans. If a defendant wants to start paying financial obligations sooner that the judgment requires, the court suspects that the Bureau of Prisons would allow her to do so. The court speculates that it is possible that there is a misunderstanding on the defendant's part—perhaps she *chose* to start paying her obligations early when she had her initial financial plan development meeting with institution staff, not realizing that the court had not ordered her to start paying while in custody.

But the defendant's letter makes it sound as if the institution has interpreted the judgment to require the defendant to pay while she is in

custody. If so, the institution has incorrectly interpreted the judgment, and the court's intentions. The court does not know how it could have made its intentions more clear, but it will do so in this order. The court did not intend, and the judgment does not require, the defendant to make payments against the $1,400 special assessment or the restitution while she is in custody. The court intended, and the judgment requires, the defendant to begin paying the $1,400 special assessment and the restitution, with payments being applied in the order specified at the very bottom of page 6 of the judgment, thirty days after she is released from custody into supervision. In addition to this order, the court will add language to the judgment to try to make this clear.

The defendant also asks the court to revise the judgment to order that the full restitution amount is a joint and several obligation with "the Co-conspirators." Dkt. No. 60 at 4. The court will grant that request.

The court notes first, however, that the defendant appears to believe that she owes $148,000, and that she also will owe "tax" on that amount. Id. The judgment says that the defendant owes $143,016, some five thousand dollars less than what she appears to believe she owes. While $143,016 is still a lot of money, the court wants the defendant to be clear on her obligation.

Second, the court *did* order that *part* of that restitution is a joint obligation. The order of judgment says that $10,412 of that amount is a joint obligation with Marcel Davis. The reason the judgment says that is because the government provided probation and the court with information at sentencing,

5

indicating that Marcel Davis worked with the defendant to prepare some of the tax returns that generated that amount of refund money.

The court suspects that by "co-conspirators," the defendant means the other individuals mentioned at her trial. There was a good deal of testimony that the defendant worked with LaTanya Ghee in preparing false returns. The government charged LaTanya Ghee with tax fraud; she pled guilty, and as part of her sentence, the court ordered Ghee to pay restitution of $84,734 "jointly and severally with Paula Forbes, less any amount already paid." <u>United States v. Ghee</u>, 17-cr-40-pp, dkt. no. 19 at 5. There was also testimony at the defendant's trial about a woman named Vickie Price. The government charged Price, who pled guilty; the court ordered her to pay $331,481 in restitution. <u>United States v. Vickie Price</u>, 16-cr-61-pp. The government, however, did not provide the court with information indicating that Price was jointly and severally responsible with *Paula Forbes* for any restitution. Rather, the government provided information that Price was jointly and severally liable for $46,723 of her restitution with Marcel Davis.

The court agrees with the defendant that the court needs to amend her judgment to show that $84,734 of her restitution is owed jointly and severally with LaTanya Ghee. The court will grant her request to that extent. It will not amend the judgment to make the entire amount joint and several, because the court does not have specific information regarding any other amounts that should be joint and several with any other individuals.

The court **GRANTS** the defendant's letter motion to modify her judgment.

Dkt. No. 60. The court will enter an amended judgment immediately.

Dated in Milwaukee, Wisconsin this 22nd day of March, 2018.

BY THE COURT:

**HON. PAMELA PEPPER**
**United States District Judge**